Albert A. Blinder, J.
This is an application for an order directing the production by the State of certain records of the *480 Warwick State Training School for Boys and certain records of the Division for Youth for discovery, inspection and copying by the claimant.
The claim herein seeks damages in the amount of $821,172.31 for the alleged personal injuries sustained by the claimant and for the alleged wrongful death of Albert M. Juergens as a result of a shooting incident which allegedly took place on September 16, 1972 when one Terry Bivens, a 14-year-old boy, together with an accomplice broke into and entered the Juergens’ home. It is alleged that Terry Bivens had been released on June 16, 1972 from the Warwick State Training School for Boys, a correctional facility operated by the State of New York. It is also alleged that at the time of the shooting he was under the supervision of an aftercare worker employed by the New York State Division for Youth.
Claimant avers negligence on the part of the State in releasing Bivens from custody, knowing his vicious propensities for violence and harm, failing to supervise him properly and to restore him to custodial care after his release, before the shooting incident.
Pursuant to two prior orders of this court, depositions were taken of an assistant superintendent of the Warwick State Training School for Boys and of the Division for Youth aftercare worker.
When claimant first moved for an examination before trial, claimant sought in addition the production and inspection of all books and records maintained at the school pertaining to the confinement and release of Terry Bivens. That portion of claimant’s request was opposed on the grounds that the records requested were deemed confidential under section 372 of the Social Services Law and could only be inspected and examined by persons authorized by the State Commission of Social Services or by a Justice of the Supreme Court, after notice to all interested persons and a hearing pursuant to said section. In the court’s memorandum opinion which was filed on December 10, 1975, we stated "[a]t the examination before trial, the Claimant may inquire from the witness as to the existence, description and identity of any and all of the assailant’s records. This information is to ascertain the existence of the records clearly enough to make proper application to a Justice of the Supreme Court pursuant to the Social Services Law if necessary.”
At the examination of the acting superintendent of the *481 Warwick School, the records were marked as exhibits and placed in separate files. The records of the Division for Youth were also produced at the examination before trial of the aftercare worker assigned to the Bivens case. Therefore, the records of the alleged assailant have been marked for identification but claimant has not been permitted to inspect or copy them.
Claimant’s very able counsel states that Terry Bivens was an extremely venal and violent boy and that the employees of the Warwick Training School for Boys who were responsible for his release in June, 1972, as well as the employees of the Division of Youth who were responsible for his supervision up to and including the time of the shooting, knew or should have known of his unstable mental condition and his dangerous propensities. It is clear then that the records of the Warwick School and the Division of Youth constitute the most reliable evidence of the knowledge of the various State employees charged with the responsibility of the assailant. Claimant’s counsel states that in the absence of an opportunity to inspect and copy the records, the case cannot properly be prepared for trial.
The records of the Warwick School which the claimant seeks are required to be maintained pursuant to subdivision 1 of section 372 of the Social Services Law. All of the records which claimant seeks are assertedly deemed confidential pursuant to subdivision 4 of section 372 of the Social Services Law. In previous decisions dealing with similar applications, it has been stated that (Gagliano v State of New York, 66 Misc 2d 643, 645) "[t]he Legislature has determined that the records relating to these young people required even greater restrictions than the records of persons under the aegis of the Department of Mental Hygiene.”
Subdivision 3 of section 372 of the Social Services Law provides that a parent, relative or legal guardian may obtain a Supreme Court order directing the officers of an institution or authorizing agency to furnish extracts from the records relating to a child if the court may deem it proper. Subdivision 4 of section 372 as newly amended (L 1976, ch 824) provides as follows: "All such records relating to such children shall be open to the inspection of the board at any reasonable time, and the information called for under this section and such other data as may be required by the board shall be reported to the board, in accordance with the rules of the *482 board. Such records kept by the board shall be deemed confidential and shall be safeguarded from coming to the knowledge of arid from inspection or examination by any person other than one authorized, by the board, by a judge of the court of claims when such records are required for the trial of a claim or other proceeding in such court or by a justice of the supreme court after a notice to all interested persons and a hearing, to receive such knowledge or to make such inspection or examination. No person shall divulge the information thus obtained without authorization so to do by the board, or by such judge or justice.”
Defendant asserts that from a reading of subdivision 3 and subdivision 4 together, subdivision 3, in referring only to a parent, relative or legal guardian, seeks to exclude the discovery of the records of an institution or agency by persons other than a parent or one in a parent’s standing and that subdivision 4 by omitting a reference to "extracts” intended to deny copies of the board’s records to persons not related to the child who seek discovery. Case law supports this position. (See Matter of Wasserstein v Warwick State Training School for Boys, 54 Misc 2d 948.)
The Wasserstein case is remarkably similar to the case at bar. It involved a boy who was released on probation from the Warwick Training School who allegedly assaulted and injured the petitioner therein. The court denied the petitioner the right to examine the records of the school stating (p 950) "[although the Warwick School may be an institution in the Social Services Department, nevertheless subdivisions 3 and 4 of section 372 make a definite distinction between examination of records in schools under its jurisdictions and records of the Social Services Department itself.”
Another recent case dealing with discovery and inspection of records of the State training school was Matter of Pilch (78 Misc 2d 57). In Pilch the court stated that the petitioner who sought the records of an assailant for utilization in a claim against the State had sufficient standing for an examination of records pursuant to subdivision 4 of section 372 but declined to order the Department of Social Services to obtain records under subdivision 1 of section 372 for petitioner’s purposes.
The defendant continues to argue that subdivisions 3 and 4 of section 372 of the Social Services Law have never been *483 interpreted to permit disclosure of training school records or any Division for Youth records to claimants suing the State for personal injuries or wrongful death. It is stated that the courts of the State of New York specifically have safeguarded the confidentiality of training school records from inspection and copying from persons bringing claims against the State. The defendant argues that this interpretation is discernable by a reading of the Wasserstein and Pilch cases (supra).
The defendant argues that chapter 824 of the Laws of 1976 which amended subdivision 4 of section 372 of the Social Services Law does not permit the Court of Claims to disclose Division for Youth records to claimants suing the State for personal injuries or wrongful death. It is submitted that the amendment was not designed to grant to the Court of Claims any greater authority than that granted to the Supreme Court. As support for this proposition, the defendant states that the April 5, 1975 memorandum in support of the proposed amendment stated that the purpose of the bill was "[t]o provide that the Court of Claims shall have authorization identical to the present authorization of the Supreme Court to permit the examinations of certain records where they are required for the trial of a claim in the Court of Claims.” Hence, the defendant argues that the Legislature did not wish to disturb the ruling in Wasserstein (54 Misc 2d 948, supra) and that since claimant is not a parent, relative or legal guardian, she may not be granted access to confidential records of the Warwick School and the Division for Youth.
Defendant also argues that the records sought are neither vital nor necessary for the preparation of claimant’s suit against the State since claimant has previously examined two employees of the Division for Youth who are acquainted with the alleged assailant. Defendant states that the "first hand information, gained in the Before Trial Examination, precludes the need to disclose any confidential records of the Warwick School, the Division for Youth, or the Department of Social Services.” This contention, of course, is purely subjective on the defendant’s part. The court cannot, without first looking at the records, determine that their discovery would not be of benefit to claimant in proving the amended claim. Discovery of all evidence material and necessary is favored. (See Rohde v State of New York, 33 AD2d 707.)
Defendant’s argument as to the confidentiality placed upon *484 the assailant’s records presents a more difficult question which must be answered.*
The court has carefully examined the various statutory material pertaining to the confidentiality of the records of juveniles. In analyzing the question of disclosure, the court has studied the history of the relevant New York legislation. The first known relevant law was passed in 1857 (L 1857, ch 61) which imposed upon the managers of orphan asylums a duty "to provide and keep always open for the inspection of all desiring to examine it, a book, in which shall be registered the names, age and parentage, as near as the same can be ascertained, of all children committed to their care”. In 1869 by chapter 411 of the Laws of 1869 coverage was expanded to include not only orphans, but destitute, disorderly or delinquent minors. The statute then required that the records be opened to the inspection of any citizen of the State with extracts given within 24 hours after request to any parent or relative of the child. That act was amended in 1870, 1875, and 1878 but no change was affected until the provision was repealed and the contents revised and codified in 1884 when the scope of application was enlarged under chapter 438 of the Laws of 1884 to cover minors received "whether as orphan, or as pauper, indigent, destitute, vagrant, disorderly, or delinquent persons”. The act also eliminated the requirement for inspection by the public. Extracts were to have been supplied after request by any parent, relative or legal guardian of a child or of a secretary or other officer of the institution and an order of the Supreme Court to that effect. The provision was construed to leave the issuance of such an order to the sound discretion of a Supreme Court Justice. (Matter of Karowney, 79 Hun 195.) The Legislature in 1894 revised the law by chapter 54 of the Laws of 1894 to provide: "The supreme court may, upon application by a parent, relative or legal guardian of such child, after due notice to the institution and hearing had thereon, by order direct the officers of such institution to furnish such parent, relative or legal guardian with such extracts from such record relating to such child as such court may deem proper.”
*485 In 1898 regulations under the State Charities Law were codified pertaining to the placing of children. (L 1898, ch 264.) Records of name, age, parental residence were required to be kept with no restrictions as to access or copying. That act in turn was rewritten in 1923. Organizations which commit or place out children were required to make reports to the State Board of Charities and to keep certain records. Chapter 706 of the Laws of 1923 incorporated the language drafted in 1894 but added a new requirement upon the institution in that it now was required in addition to maintaining the records, to submit copies of reports and records to the board.
The 1923 provisions were found in the State Charities Law and later amended in 1940 by chapter 619 of the Laws of 1940, to their most recent language as subdivision 4 of section 372 of the Social Welfare Law.
The Social Welfare Law became the Social Services Law in 1967 by chapter 728 of the Laws of 1967.
Subdivision 4 of section 372 most recently has been amended by chapter 945 of the Laws of 1971 to substitute "board” for "department” and "rules of the board” for "regulations of the department.”
Claimant argues that the original restrictions on production of extracts by the institution was preserved but access to the institution’s documents after submission to the board was afforded to any person so authorized by the board or the court. It is suggested that since there is no express procedure for disclosure by institutions to nonrelatives under subdivision 3 of section 372, prohibition might be inferred, which it is stated by claimant, is contrary to public policy favoring full disclosure.
Section 372 is hardly a model of proper and clear legislative enactment. In construing and interpreting the new subdivision 4 of section 372, it is necessary to utilize the definitions of the terms found within the section and to apply the legislative intent of chapter 824 of the Laws of 1976.
It is apparent to the court that by the 1976 amendment of subdivision 4 of section 372 of the Social Services Law (at the recommendation of the Court of Claims) the Legislature intended to grant to claimants in the Court of Claims the right to discovery and inspection of records maintained pursuant to subdivision 1 of section 372.
Subdivision 4 of section 372, if read literally (since its 1971 *486 revision), only confers confidentiality upon such records maintained under subdivision 1 of section 372 as shall be furnished to the "Board of Social Welfare” and "kept” by such board. Under 18 NYCRR 9.8(b)(16) it would appear that only a portion of the statistical records maintained under subdivision 1 would be so covered and probably not the records sought by this application. This could be ascertained only at a hearing.
The balance of the records maintained under subdivision 1, not specifically cloaked by statutory confidentiality, would be subject to the rules of discovery and inspection contained in the CPLR, with objections confined to those allowed therein as well as to those of necessity, materiality, relevancy and privilege.
It should be noted that the Warwick School is now under the jurisdiction of the Division of Youth of the executive department and no longer under the Department of Social Services. (See Executive Law, § 501; L 1971, ch 105.) This court was unable to ascertain the existence of any express statutory confidentiality covering the Division of Youth. (See 9 NYCRR 168.7.) The relationship of the Division of Youth to the Board of Social Welfare, if any, in connection with subdivision 4 of section 372 will be one of the subjects of the hearing to be held pursuant to this memorandum-opinion.
The fact that the Legislature in 1976 chose not to amend subdivision 3 of section 372 does not necessarily indicate that it thereby confirmed the confidentiality of records maintained by the institutions pursuant to subdivision 1 thereof. It merely continued the requirement that one particular group of persons had to obtain a Supreme Court order to obtain an extract of the same. It is illogical to believe that the State would utilize this cloak of confidentiality to defeat the rights of a claimant to due process when it accords the same claimant the right to commence and maintain a cause of action within the framework and confines of the Court of Claims Act. At most the failure to amend subdivision 3 would mean that the Legislature saw no purpose in doing so since there was no expressed prohibition to the granting of discovery and inspection pertaining to an action in the Court of Claims.
A question which now should be resolved is whether by amending subdivision 4 of section 372 the Legislature intended the Court of Claims to have greater authority than that previously granted to a Justice of the Supreme Court. In this regard, the statute reads, inter alia, as follows: "by any *487 person other than one authorized, by the board, by a judge of the court of claims when such records are required for the trial of a claim or other proceeding in such court or by a justice of the supreme court after a notice to all interested persons and a hearing, to receive such knowledge or to make such inspection or examination.”
As can be seen by the language utilized by the Legislature, it is not clear whether a Judge of the Court of Claims is required to hold a hearing after notice to all interested persons as is a requirement under the statute for a Justice of the Supreme Court. However, this court has reviewed the legislative memoranda accompanying the introduced bill (which became law) and we find that although the statute is not clear, and it can be argued that Judges of the Court of Claims need not hold hearings after notice to interested parties, the intent was that the Court of Claims have coequal jurisdiction with the Supreme Court. Therefore, it is the court’s holding that notice must be given to all interested persons. After notice of motion was given in the instant case, claimant filed additional papers in which claimant established by an affidavit of service that she did in fact give sufficient notice to interested parties and in addition gave further notice to all of the parties who would in any way appear to be interested.
The court, therefore, directs that a hearing be held at a time set forth in the order signed simultaneously herewith. At that time defendant shall produce all of the records that have previously been marked for identification and the court will thereafter, in camera, review the records and determine the extent of their discoverability.
This memorandum-opinion shall not be deemed to prejudice any application which may be made to discover other records which may be maintained by any other division or department of the State of New York, including the Board of Social Welfare pursuant to the CPLR or subdivision 4 of section 372 of the Social Services Law if the hearing should indicate the existence of such.

 Provisions safeguarding the confidentiality of juvenile records are contained not only in the Social Services Law and Division for Youth regulations, but also in the Family Court Act, the Criminal Procedure Law, the Federal Youth Corrections Act, the Federal Juvenile Justice and Delinquency Prevention Act of 1974 and Federal regulations promulgated pursuant to the Omnibus Crime Control and Safe Streets Act of 1968.